Stacy Scheff
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611
Tucson, AZ 85717
(520)471-8333| Fax (520)300-8313
stacy@schefflaw.com

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Fuller<br><br>        Plaintiff,<br><br>vs.<br><br>Christina Lopez, et.al.,<br><br>        Defendant | Case No.: 2:19-CV-05818-DWL-CDB<br><br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM** |

Plaintiff Justin Fuller, by and through undersigned counsel, hereby move for

partial summary judgment pursuant to Fed. R. Civ. P. 56 on the narrow question of

whether Plaintiff was legally capable of, and actually did, consent to sexual conduct with

Defendant Christina Lopez on June 8, 2019:

**Background**

This case "involves sexual abuse of prisoners by those supposed to protect them,

the prison guards," *Wood v. Beauclair*, 692 F.3d 1041, 1044 (9th Cir. 2012) - a scenario

that often results in "the state argu[ing] it has no liability because the prisoner consented

to the sexual conduct." *Id.*   What Plaintiff Justin Fuller experienced in June 2019 at the

hands of a prison guard was what society properly categorizes as rape - something that is

"offensive to human dignity" and therefore a violation of the Eighth Amendment. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

On June 8, 2019, Defendant Christina Lopez was working as a prison guard at the Saguaro Correctional Center in Eloy, Arizona.  Fact 2.  During a moment when Lopez believed that she would not be detected by her co-workers, she entered the cell belonging to Plaintiff Justin Fuller, shut the door, turned off the lights, and - when methods of persuasion proved ineffective - forcibly pulled down his pants and raped him.  Following an internal prison investigation and a subsequent criminal investigation by the Eloy Police Department, Lopez was charged and convicted with sexual conduct with an inmate.  Because the criminal statute under which Lopez was charged prohibits *any* type of sexual contact between guard and prisoner, Lopez's criminal conviction did not require law enforcement to examine whether Mr. Fuller was a willing participant.  He was not.  Fact 4; Fact 8.  For this reason, Mr. Fuller filed suit against (former) prison guard Lopez and the private prison company that set the conditions that allowed for her egregious conduct.

**Standard**

Prisoner Eighth Amendment challenges generally fall into three broad categories, each with a distinct line of precedent.  Mostly commonly, a constitutional claim alleging inadequate medical treatment requires a prisoner to demonstrate "deliberate indifference to [his] serious medical needs."  *Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Closely related are constitutional

cases challenging the conditions of confinement. *See Hope v. Pelzer*, 536 U.S. 730, 737–

38 (2002).  This case belongs to the third category, excessive force, which stands apart

from the others because it typically requires the plaintiff to scale a lower hurdle in

making a case.  *See Hudson v. McMillian*, 503 U.S. 1, 5–6 (1992) (holding that an

excessive force Eighth Amendment claim does not require proof of "serious injury");

*McCleskey v. Kemp*, 481 U.S. 279 (1987) (noting that any degree of physical force

imposed by prison officials "might be unconstitutionally severe if inflicted without

penological justification"); *Bearchild v. Cobban*, 947 F.3d 1130, 1143 (9th Cir. 2020)

(observing that with certain categories of excessive force, "the subjective component of .

. . intent is presumed" and need not be independently proven by the prisoner).

In a typical Eighth Amendment excessive force case, courts are asked to determine

whether "to afford prison staff significant deference in their use of force", but sexual

assault by a prison guard is "always deeply offensive to human dignity and is completely

void of penological justification." *Wood v. Beauclair*, 692 F.3d 1041 (9th Cir. 2012)

(omitting internal citations).  In other words, the prison guard's subjective intent "is

presumed if an inmate can demonstrate that a sexual assault occurred." *Bearchild v.

Cobban*, 947 F.3d 1130 (9th Cir. 2020).  The undisputed facts demonstrate that sexual

contact did occur between the Defendant and Mr. Fuller, the sexual contact was

unwanted, and Mr. Fuller expressed his unwillingness to Defendant prior to and during

the assault.  Thus, a sexual assault occured.

**Mr. Fuller did not Consent**

On June 8, 2019, Mr. Fuller and Defendant engaged in sexual conduct inside Mr. Fuller's prison cell.  Fact 3.  It was non-consensual, and Defendant knew it.  Fact 16, Fact 18. As the saying goes, 'no' always means 'no', and Mr. Fuller unequivocally told her no:  not once, but several times in the hours and moments leading up to Defendant placing her hand on Mr. Fuller's genitals.  Fact 9, Fact 16.  But because of the "enormous power imbalance between prisoners and prison guards," treating even an enthusiastic 'yes' as consent would be, at best, "a dubious proposition" under the circumstances. *Wood v. Beauclair*, 692 F.3d 1041 (9th Cir. 2012).

It is undisputed that on June 8, 2019 Mr. Fuller was a prisoner and that Defendant was a prison guard.  Fact 1, Fact 2.  Thus, the "enormous power imbalance" was there at the start. Defendant had the ability to make his life a "living hell", or conversely, to "treat him like a King", Fact 20, in a setting otherwise devoid of kingly possessions.  For example, "prisoners have no control over most aspects of their daily lives":  the most basic life necessities such as food, clothing, and warmth are determined by prison officials.  *Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012).

Prison guards control not only creature comforts, but also whether a prisoner is sent to a segregated housing unit ("SHU") - something that Mr. Fuller greatly feared if he were caught with misconduct.  As with so many prisoners, Mr. Fuller feared being "written up" and therefore being sent to segregation housing.  Fact 10.  In June of 2019, this was front of mind to Mr. Fuller, who had only a short time left on his sentence and did not want to spend it in segregation.  Id. Mr. Fuller told Defendant this concern.  Fact

4

10, Fact 11.  Paradoxically, while Mr. Fuller feared being "written up" by other prison guards who might discover him engaged in sexual conduct with Defendant, he also feared being "written up" by Defendant in a retaliatory fashion for refusing to consent to her sexual advances.  Fact 14. Mr. Fuller observed Defendant gratuitously writing up other prisoners in unwarranted situations.  And in the moments before the assault occurred, Mr. Fuller had reason to believe he was already upsetting Defendant for verbally refusing her. Fact Even recognizing this risk, Mr. Fuller continued expressing his lack of consent.  Fact 16.  This Catch-22 scenario is precisely why "the power dynamics between prisoners and guards make it difficult to discern consent from coercion."  *Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012).

In short, consent in prison cases is treated not unlike that found in other scenarios where great power imbalances exist between two people.  *Pantastico v. Dep't of Educ.*, 406 F.Supp.3d 865 (D. Haw. 2019) (finding a constitutional violation where a public school coach engaged in consensual sex with an 18-year-old high school student because "the power disparities in prison [are analogous] to that of a teacher over a student."); *Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012) ("Just as power inequities between adults and minors, teachers and students, and owners and slaves foster opportunities for sexual abuse, so too does the prisoner-guard relationship.")  Defendant had the power to make Mr. Fuller's life much more difficult than the difficulties normally attendant prison life.  Whether Defendant was prepared to exercise that power is irrelevant.  Mr. Fuller knew she could, and she told him she would.  Fact 14.

5

## CONCLUSION

Because of the unique power imbalance that existed in June 2019 between Defendant Lopez and Mr. Fuller when sexual acts occurred, Plaintiff requests a narrow finding of partial summary judgment in his favor, finding that he was legally incapable of consenting to sexual conduct under the circumstances, and that  - in fact – he did not consent to Defendant Lopez's sexual aggressions, as the term 'consent' is understood under Ninth Circuit law applicable to guard-on-inmate sexual relations under the Eighth Amendment.

Dated this 9th day of July 2021.

/s Stacy Scheff

Stacy Scheff, Counsel for Plaintiff

I hereby certify that on July 9, 2021, using the CM/ECF system, I caused to be delivered electronically to all other parties to this action a copy of the attached Plaintiff's Motion for Partial Summary Judgment.

6